FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2007 OCT 30 P 12: 21
CLERK'S OFFICE
AT BALTIMORE
BY________DEPUTY

**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND**

MICHAEL CHAMBERS :
Petitioner :
:
v. : Criminal No. 99-0451
: Civil No. L-04-1531
UNITED STATES OF AMERICA :
Respondent :
:
:

**MEMORANDUM**

Now pending is pro se Petitioner Michael Chambers's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Because the papers adequately present the issues, no evidentiary hearing is necessary.[1] For the reasons that follow, the Court will, by separate Order, DENY the motion and DIRECT the Clerk to CLOSE the case.

## I. Background

On October 5, 1999, a federal grand jury sitting in Baltimore handed down a five-count indictment that charged Michael Chambers with conspiracy to distribute and possess with intent to distribute a mixture containing heroin in violation of 21 U.S.C. § 846, possession with intent to distribute a mixture containing cocaine base in violation of 21 U.S.C. § 841, possession with intent to distribute a mixture containing cocaine base and heroin in violation of 21 U.S.C. § 841, use or carrying a firearm during a drug trafficking crime in violation of 21 U.S.C. § 924(c), and being a felon in possession of a

[1] See United States v. Yearwood, 863 F.2d 6, 7 (4th Cir. 1988) (recognizing that "[a] hearing is not required…on a § 2255 motion if the record conclusively shows that petitioner is entitled to no relief").

C/M CHAMBERS 10-30-07

firearm in violation of 18 U.S.C. § 922(g). On November 18, 1999, Chambers pleaded not guilty to each of the five counts.

On May 22, 2000, the case went to trial. On May 26th, the jury found Chambers guilty on all counts. The evidence proved that Chambers headed a successful drug organization from August 1998 to June 1999. During that period,[2] Chambers operated a vigorous drug business in the Ensor Street area of Baltimore.[3] On September 29, 1998, Baltimore City police seized 350 "$5 vials" of crack cocaine from an automobile Chambers had been driving.[4] On June 25, 1999, the police, executing a search warrant, found an ounce of heroin and drug packaging materials in a bedroom that contained Chambers' checkbook and personal papers.[5]

Chambers was represented at trial by Donald H. Feige, Esq. On July 14, 2000, Chambers requested new counsel. On July 20, 2000, the Court granted the request and appointed G. Arthur Robbins, Esq., an Annapolis-based trial lawyer. Robbins entered his appearance, consulted with Chambers, and filed a Renewed Motion for Judgment of Acquittal under Fed. R. Crim. P. 29.

On June 12, 2001 the parties appeared for a hearing on Robbins' Rule 29 motion and for sentencing. After hearing argument, the Court denied the motion and then turned to sentencing.

---

[2] Chambers was incarcerated from November 23, 1998 to January 1999. Government witness Julia Smith testified that Chambers sold drugs before and after the period of jail-time. By its verdict, the jury agreed with the Government that Chambers' incarceration did not represent an affirmative act taken by Chambers to withdraw from the conspiracy. See, e.g., United States v. West, 877 F.2d 221, 289-90, n.4 (4th Cir. 1989) (neither arrest nor incarceration constitute per se withdrawal).

[3] At least two individuals conducted hand-to-hand drug sales for Chambers in the Ensor Street area.

[4] The police seized approximately sixty-eight grams, or just under 2.4 ounces, from the vehicle. There are a little more than thirty-five ounces in a kilogram (35.2739684).

[5] The police found hundreds of $5 vials for hand-to-hand crack cocaine sales and hundreds of gelatin capsules for hand-to-hand heroin sales.

Because the Government had not charged a specific drug amount in the conspiracy count of the indictment, the Court heard oral argument on the quantity of crack cocaine attributable to Chambers. Ultimately, the Court sentenced Chambers to 240 months imprisonment for his conviction on the conspiracy count of the indictment, the statutory maximum absent a jury finding of a specific drug quantity. The Court sentenced Chambers to an additional 60 months imprisonment for his conviction for possession of a firearm in furtherance of a drug trafficking crime, which by statute must run consecutively to any other sentence. See 18 U.S.C. § 924(c)(1)(D)(ii). The Court imposed concurrent terms for the remaining three counts.

Chambers appealed. On January 16, 2003, the Fourth Circuit Court of Appeals affirmed Chambers's conviction in an unpublished, per curiam opinion. See United States v. Chambers, 59 Fed. App'x 509 (4th Cir. 2003). On May 19, 2003, the Supreme Court denied Chambers's writ of certiorari. See Chambers v. United States, 538 U.S. 1051 (2003).

On May 14, 2004, Chambers filed the instant § 2255 motion. In it, Chambers claims that Robbins was ineffective both at sentencing and on appeal because he: a) did not properly object to the District Court's drug quantity findings and b) failed to argue that the jury and not the judge should have found the drug quantity attributable to Chambers.

## II. Strickland v. Washington Standard

Ineffective assistance of counsel claims are evaluated under the Strickland two-prong test, which requires Chambers to show (i) that counsel's performance was deficient and (ii) that counsel's deficient performance prejudiced him. Strickland v. Washington,

466 U.S. 668, 687 (1984). To establish the first prong, Chambers must produce evidence that his counsel's performance was not "within the range of competence demanded of attorneys in criminal cases." Id. As for the second prong, Chambers must show that but for his attorney's deficient performance, the result of the proceedings would have been different. See id. The Court can address either the effectiveness or prejudice prong first, and if it finds that Chambers cannot satisfy one of the prongs, it should deny the claim. Id. at 697.

## II. Drug Quantity Finding

Chambers claims that Robbins failed to adequately challenge the District Court's drug quantity finding at sentencing in a number of ways. During sentencing, the Government argued that the testimony of Charles Glascoe established that Chambers was responsible for at least 1.5 kilograms of drugs. Glascoe had testified at trial that the Chambers's conspiracy likely brought in $2,000 a day in drug sales.[6] Robbins attacked Glascoe's testimony as exaggerated and unreliable.

Chambers faults Robbins for failing to do more. Chambers states that Robbins had access to "an array of mitigating information" but failed to use that information to impeach Glascoe. Chambers never identifies the mitigating information, however. Nor does Chambers explain how the information would have made an impact on his sentence.

The Government also argued that the 350 $5 vials of crack that the Baltimore City police seized from Chambers's car corroborated Glascoe's estimate of Chambers's daily drug sales. Chambers claims that Robbins did not present a contrary argument. Chambers is incorrect. Robbins presented several arguments to refute the government's

---

[6] Four hundred hand-to-hand transactions using $5 vials would total approximately 77.71428 grams a day, or 2.74 ounces.

claim. Robbins argued that the only amount of crack cocaine attributable to Chambers was the 350 vials, that Glascoe's testimony was unreliable, and that, under his interpretation of the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), Chambers was entitled to an extremely low base offense level.

The Court found Chambers responsible for 1.5 kilograms (approximately 50 ounces) of cocaine base. In part, the Court came to this number by considering the amount of crack found on Chambers on September 29, 1998 a "snapshot of one day or even…several days of the conspiracy." Chambers faults Robbins for failing to object to the Court's use of this method. The argument is without merit. Robbins had already argued that the government had only presented enough evidence to connect Chambers to the 350 vials of crack seized from Chambers's automobile. Once the Court made its factual finding, further argument would have been inappropriate.[7]

Robbins adequately challenged the Court's drug quantity finding. Additional arguments would not have added anything to Chambers's defense. Accordingly, Chambers's claim is denied.

In addition, Robbins's failure to challenge the Court's drug quantity findings on appeal did not render his performance deficient. Appellate counsel need not assert every non-frivolous issue on appeal and may omit weak claims if he believes they would dilute stronger arguments. See Jones v. Barnes, 463 U.S. 745, 751-752 (1983). The Court relied on ample evidence connecting Chambers to the sale of at least 1.5 kilograms of cocaine base, including the testimony of Charles Glascoe and the drugs and empty vials

---

[7] For the same reasons, the Court also denies Chambers' argument that Robbins failed to object to the Court's "conclusory statements" that 1.5 kilograms were reasonably foreseeable to Chambers. The statements were not conclusory, but were findings of fact that were well-supported by the evidence entered at trial.

that the police seized from Chambers's car and residence. Any challenge to the Court's factual finding would have failed. Accordingly, Robbins's choice not to dilute his arguments on appeal with a weak claim did not render his performance deficient.

**III. Apprendi /Blakely/ Booker Violation**

Chambers also contends that Robbins should have argued that his sentence was unconstitutional because a jury did not find the quantity of drugs attributable to Chambers. On direct appeal, the Fourth Circuit held that Chambers was properly sentenced because Chambers's sentence on the conspiracy count was within the applicable twenty-year statutory maximum. United States v. Chambers, 59 Fed. App'x. 509, 511 (4th Cir. 2003) (citing Apprendi v. New Jersey, 530 U.S. 466 (2000)).

Chambers claims, however, that the District Court's sentence violated Blakely v. Washington, 542 U.S. 296, 303-304 (2004). Chambers argues that the Court's drug quantity finding increased the applicable sentencing range under the United States Sentencing Guidelines. In Blakely, the Supreme Court held that any fact that increases the "standard range" set by Washington's statutory sentencing scheme must be submitted to the jury. Id. at 304. In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court applied Blakely and Apprendi to the United States Sentencing Guidelines and held that any fact that increases the mandatory guidelines' sentencing range must be submitted to a jury. Although Chambers does not cite Booker, the Court will assume that he also relies on Booker.

The Fourth Circuit has held that the rule announced in Booker "is not available for federal prisoners whose convictions became final before Booker (or Blakely)." United States v. Morris, 429 F.3d 65, 72 (4th Cir. 2005). Chambers's conviction became

final on May 19, 2003, before the Supreme Court decided either Blakely or Booker. Accordingly, the Booker rule does not apply retroactively to Chambers's sentence. Moreover, Robbins was not ineffective for failing to make a Booker-type argument at sentencing or on appeal. It is a well-established principle that counsel need not predict future changes in the governing law to be judged competent. Strickland, 466 U.S. at 668, 689.

## IV. Conclusion

For the foregoing reasons, the Court will, by separate Order DENY Williams's § 2255 motion and DIRECT the Clerk to CLOSE the case. Should Williams choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit, he is ADVISED that he must file a notice of appeal with the Clerk of this Court within 60 days after the date of the entry of the judgment order. Upon reviewing the notice of appeal, this Court will either issue a certificate of appealability or state why a certificate should not issue in accordance with Federal Rule of Appellate Procedure 22(b)(1). If this Court should deny certification, Williams may request a circuit judge of the United States Court of Appeals for the Fourth Circuit to issue the certificate.

Dated this 25th day of October 2007.

Benson Everett Legg
Chief Judge